**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **EARL GRELSON** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 1:11-cv-6063** |
| | § | |
| **VS.** | § | |
| | § | |
| **FOSTER WHEELER ENERGY** | § | |
| **CORPORATION, ET AL.** | § | |
| | § | |
| **Defendants.** | § | |

**FOSTER WHEELER ENERGY CORPORATION'S NOTICE OF REMOVAL**

TO THE HONORABLE JUDGE OF UNITED STATES DISTRICT COURT:

Pursuant to Title 28 U.S.C. § 1442(a)(1) and 1446, Defendant Foster Wheeler Energy Corporation ("Foster Wheeler"), gives notice of removal of an action filed against it in the Circuit Court of Cook County, Illinois County Department, to the United States District Court for the Northern District of Illinois. In support, Foster Wheeler respectfully offers the following:

**Preliminary Matters**

1. On or about July 21, 2011, plaintiff filed this lawsuit, entitled Earl Grelson, Case No. 2011L007578 against Foster Wheeler and numerous other defendants in the Circuit Court of Cook County, Illinois County Department. *See* Summons and Complaint attached hereto as Exhibit A.

2. Plaintiff served Foster Wheeler with plaintiff's Summons and Complaint on August 1, 2011. The Complaint includes allegations that plaintiff Earl Grelson was exposed to asbestos while serving in the United States Navy ("Navy") from1948 to 1952. More specifically, there are allegations of exposure to asbestos from Foster Wheeler boilers and economizers while working on the USS Joseph P. Kennedy, Jr.. *Id.*

3. Thus, this Notice of Removal is timely filed in that it is filed within thirty (30) days after the first receipt by Foster Wheeler of plaintiff's initial pleadings from which it ascertained that this case is removable. 28 U.S.C. § 1446(b).

**Nature Of The Case**

4. The case is based on plaintiff's allegations that Earl Grelson's asbestos-related disease was caused by his exposure to asbestos dust and/or fibers.

5. Plaintiff asserts failure to warn claims, manufacturing defect, and negligence claims, against Foster Wheeler and the other defendants based on various theories.

**Grounds For Removal**

6. This Notice of Removal is filed within thirty (30) days of Defendant's receipt of plaintiff's Complaint. 28 U.S.C. § 1446(b). Foster Wheeler manufactured marine boilers and auxiliary equipment for use on Navy ships pursuant to contracts and specifications executed by the Navy. Foster Wheeler has confirmed that it manufactured the marine steam generators, including boilers and economizers, on the USS Joseph P. Kennedy, Jr.. Thus, the basis for removal is that, in the manufacture and sale of boilers and auxiliary equipment for the Navy, including all aspects of warnings associated with that equipment, Foster Wheeler was acting under an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1).

7. Should plaintiff file a motion to remand this case, Foster Wheeler respectfully requests an opportunity to respond more fully in writing, but offers the following authorities at this time:

8. As recently recognized in a landmark decision by the United States District Court for the Eastern District of Pennsylvania (MDL-875) in *Hagen v. Benjamin Foster Co.*, Case No. 2:07-cv-63346-ER (E.D. Pa. Sept. 24, 2010), Foster Wheeler has a federal defense to this action. *See*

*Hagen* (attached hereto as Exhibit B). In examining the same evidence submitted in the case at bar, Judge Eduardo C. Robreno found that Foster Wheeler raised a colorable defense to plaintiff's failure to warn claims, *i.e.*, government contractor immunity from liability for injuries arising from any exposure to asbestos related to boilers and auxiliary equipment aboard Navy vessels, insofar as they designed and manufactured by Foster Wheeler according to strict Navy specifications. Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable federal defense to plaintiffs' claims, and (3) demonstrate a causal nexus between plaintiff's claims and acts it performed under color of federal office. *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989).

9. In reaching his conclusion, Judge Robreno discussed in detail the three elements necessary for removal under this statute. First, a defendant must demonstrate that it is a "person" within the meaning of the statute. *Id.* at 446. The definition of a "person" includes a corporation. *Hagen* at p.13. Second, defendants must raise a colorable claim to a federal law defense. *Id.* As previously stated, a colorable claim to a federal defense can be predicated upon the federal government contractor defense. *Id.* at p. 15. Third, the defendant must establish that the suit is for any act under color of federal office, i.e., there is a causal connection between the charged conduct and asserted official authority. *Id.* at p. 32. Causation exists if the predicate acts of the state court suit were undertaken while the person was acting as or under a federal officer, and the acts were under color of the relevant federal office. *Id.*

10. The first and third elements require a causal nexus between the defendant's actions under the federal officer and plaintiff's state court claims. *Id.* at 447. A substantial degree of direct and detailed federal control over defendant's work is required. *Id.* What constitutes sufficient federal control is often central to a court's decision to uphold removal or remand a case. Like the

Eastern District of Pennsylvania in *Hagen*, several federal courts, including this Court, have upheld removal because defendants were sued as a result of designing and manufacturing products pursuant to military specifications. *See Corley v. Long-Lewis, Inc.*, 688 F.Supp.2d 1315, 1331 (N.D. Ala. 2010)(attached hereto as Exhibit C)(removal upheld where affidavits stated Navy dictated all aspects of design, performance requirements and materials for construction of turbines); *Fellows v. Foster Wheeler*, *et al.*, Case No. 3:09cv10015JG (N.D. Ohio Aug. 21, 2009)(Foster Wheeler provided "ample substantiation" to establish a colorable government contractor defense)(attached hereto as Exhibit D); *Curry v. American Standard, Inc., et al.*, 08-cv-10228(GBD)(S.D.N.Y. Feb. 6, 2009)(attached hereto as Exhibit E)(Foster Wheeler proffered sufficient evidence of government control over the contract specifications, manuals and warnings to demonstrate that it had a colorable government contractor defense); *Salamante v. Quintec Indus., Inc., et al.*, CV 08-4674 PA (JTLx)(C.D.Cal Sept. 22, 2008)(attached hereto as Exhibit F)(Foster Wheeler submitted sufficient evidence for purposes of section 1442(a)(1) to demonstrate that the Navy's control over warnings directly interfered with its duty to warn under state law); *Kirks v. General Electric Co.*, Case No. 08-856SLR, and *Wiersma v. General Electric Co.*, Case No. 08-857SLR (D. Del. Sept. 17, 2009)(attached hereto as Exhibit G)(affidavits submitted by GE demonstrated that defendant established a colorable government contractor defense and thus GE satisfied the requirements of the federal officer removal statute); *Allen v. General Electric Co., et al.*, Case No. 3:09-cv-0497 (JCH)(D.Conn. Aug. 27, 2009)(attached hereto as Exhibit H)(denying remand where Defendants' affidavits established the existence of a colorable government contractor defense); *Wright v. Foster Wheeler, et al.*, C07-05403 MJJ (N.D.Cal. Feb. 21, 2008)(attached hereto as Exhibit I)(removal was proper as Foster Wheeler provided sufficient evidence supporting a finding that the Navy had direct and detailed control over its ability to place warnings on its equipment manufactured for the Navy

and according to precise Navy specifications); *Marley v. Elliot Turbomachinery Co., et al.,* 545 F.Supp.2d 1266, 1275 (S.D.Fla. 2008)(attached hereto as Exhibit J)(affidavits submitted by defendants sufficient to advance a colorable government contractor defense and establish a nexus between plaintiff's injuries and defendants' official duties).

11. As detailed in *Hagen*, critical to the defendant's evidence is whether defendant has demonstrated sufficient facts establishing that its government contractor defense is "colorable"[1] or "plausible". *See Hagen* at p. 27. In the context of a "failure to warn" case, **the defendant need not show that the Navy expressly barred or broadly preempted the inclusion of asbestos warnings on its products**. *Id.* at p.19. *See also Kerstetter v. Pacific Scientific Co.,* 210 F.3d 431, 438 (5th Cir.) *cert. denied* 531 U.S. 919 (2000)(government contractor defense is available in "failure to warn" claims where the evidence shows that the lack of a warning reflects governmental direction or control rather than the unfettered discretion of the product's manufacturer, and applies wherever: 1) the government approved or authorized the warnings which the plaintiff contends were inadequate or incomplete; 2) the warnings provided by the manufacturer conformed to the warnings as approved or authorized by the government; and 3) the manufacturer warned the government as to any product hazards known by the manufacturer but unknown by the government. *Kerstetter*, 210 F.3d at 438).

---

1 The *Hagen* court distinguished the showing of a "colorable" defense required for removal from the ultimate evidentiary showing at trial, and ruled that the colorable defense standard for purposes of removal "is not an onerous one to satisfy." *Id.* at p. 21. Thus, "a defense is colorable for purposes of determining jurisdiction under Section 1442 (a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial." *Id.* at p. 27.

12. As stressed in *Kerstetter*, "[t]he government need not prepare the specifications to be considered to have approved them." *Id.* at 435. The only material issue is whether the manufacturer's designs and specifications were subjected to "substantial review" rather than a mere "rubber stamp" approval. *Id.* While this determination is necessarily fact specific, "substantial review" has plainly been shown upon evidence of a "`continuous back and forth' between the contractor and the government." *Id.* In this regard, "[t]he specifications need not address the specific defect alleged; the government need only evaluate the design feature in question." *Id.* Once again, applying these general principles to "failure to warn" claims, the fact that governmental specifications or regulations did not specifically preclude the exact warning desired by the plaintiff does not take a "failure to warn" claim outside the scope of the government contractor defense so long as the government was involved generally as to the issue of product warnings (or specifically approved the warnings provided by the contractor) and was generally aware of the hazard in question. *Id.* at 438. Stated another way, "[i]nadequacy [of a warning] is not an issue when it is the government's warning in the first place." *Id.* at 438.

13. The present case is identical to *Hagen* and substantially similar to *Kerstetter, supra*. As explained by J. Thomas Schroppe:

> The Navy exercised intense direction and control over all written documentation to be delivered with its naval boilers…The Navy required that every piece of equipment be supplied with a defined number of copies of one or more technical manuals. Navy personnel participated intimately in the preparation of this kind of information and exercised specific direction and control over its contents. These manuals included safety information related to the operation of naval boilers and economizers only to the extent directed by the Navy. Furthermore, the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy. Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning

> or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy.

*See* Affidavit of J. Thomas Schroppe attached hereto as Exhibit K at ¶¶ 21 and 22. In a previous matter, the *Arvid Johnson* case, J. Thomas Schroppe was questioned about whether he had any specific recollections of direction from the Navy regarding warnings on equipment. J. Thomas Schroppe stated the following:

> They made it clear that they were in control of any and all warnings, specifically said we **don't expect to see warnings in the book or on equipment.**

*See* Dep. of J. Thomas Schroppe in *Arvid Johnson* case, pg 117, lns. 1-4 attached hereto as Exhibit L (emphasis added). Moreover, he offered testimony regarding an instructional rewrite program that occurred in the mid-seventies. He testified he and his employees sat with the "Navy people," which was at Naval Boiler & Turbine Laboratory in Philadelphia, and discussed all issues pertinent to the instructional rewrite program. When the Navy personnel were questioned about warnings, they stated:

> **We don't want any warnings,** we only want information that is unique to your particular piece of equipment that a sailor wouldn't know, such as something you need to the super heater and you're out of the loft. **And throughout my career it's always been the Navy dictates what you shall do, dictates what you can and cannot put on a boiler.**

*Id.* at pg 113, lns 23-24, pg. 114, lns. 1-5, (emphasis added). When further questioned about the source of these orders not to place warnings on equipment, he responded:

> It was all the personnel involved in the high-pressure tech manual rewrite. Do I recall specific individuals, no, but there were a number of them at the Naval Boiler & Turbine Laboratory that were in charge of this rewrite and that was a clear opinion of all of them.

*Id.* at pg. 118, lns. 2-7. Thus, the presence or absence of warnings regarding Foster Wheeler equipment was strictly controlled by the Navy - and a clear basis for removal exists under § 1442(a)(1).

14. In further support of the removal, Foster Wheeler provides the Affidavit of Admiral Ben J. Lehman, U.S. Navy, Ret. *See* Affidavit of Admiral Lehman attached hereto as Exhibit M. Admiral Lehman joined the Navy in 1942 and worked as Ship Superintendent and Planning Officer at the Brooklyn Navy Yard between 1942 and 1944, as Ship Superintendent at the San Francisco Naval Shipyard from 1950 to 1952, and as Planning Officer at the Assistant Industrial Manager Office in San Francisco from 1952 to 1054. *Id.* at ¶ 1. During his tenure in the Navy and as Ship Superintendent, Admiral Lehman was personally involved with the supervision and oversight of ship alterations and equipment over hauls at the Brooklyn Navy Yard. *Id.* at ¶ 3. Admiral Lehman states in his Affidavit the Navy controlled every aspect of the design and manufacture of equipment intended for installation on Navy vessels and that the Navy could not, and did not, permit its contractors to implement changes from military specifications. *Id.* at ¶¶ 2 and 3. He further states:

any

> The U.S. Navy would not have allowed its equipment suppliers, such as Foster Wheeler, to affix any warning related to any asbestos hazards on their equipment. This would have included boilers. Further, the U.S. Navy would not have allowed Foster Wheeler to place warnings related to asbestos hazards in any written material provided by Foster Wheeler to the U.S. Navy or to a U.S. Navy contractor in accordance with its contracts, including its technical and operations manuals. To do so would have interfered with the U.S. Navy's mission and control of its ships and personnel.

*Id.* at ¶ 14.

Clearly, the Schroppe and Lehman Affidavits support federal removal jurisdiction under 28 U.S.C. § 1442(a)(1) and the federal nexus to Foster Wheeler's actions has been established.

15. Thus, as established by the MDL court in *Hagen*, the affidavits provided by J. Thomas Schroppe and Admiral Ben J. Lehman in this case are more than sufficient to establish "Federal Officer" jurisdiction, as well as a colorable defense under the "Government Contractor" doctrine. Nowhere is it required that Foster Wheeler produce physical contracts to prove the Navy's extensive direction and control over product specifications to satisfy the requirements of § 1442(a)(1). To promote judicial efficiency and consistency, the central purpose behind MDL-875, this Court should defer to the decision made by the MDL court in *Hagen*, and uphold removal.

16. A properly removed case cannot be remanded for discretionary or policy reasons such as allegedly related state court cases or a contention that judicial economy compels remand. 28 U.S.C. § 1447(c); *Thermitron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976). The federal officer removal statute is not narrow or limited, and it should not be frustrated by a narrow or grudging interpretation of § 1442(a)(1). *Willingham v. Morgan,* 395 U.S. 402, 405 (1960).

17. Foster Wheeler is not required to notify and obtain the consent of any other defendant in this action in order to remove plaintiffs' action as a whole under § 1442(a)(1). *See Torres v. CBS News*, 854 F.Supp. 245 (S.D.N.Y. 1994)

18. As required by 28 U.S.C. § 1446(b) and the local rules of this Court, true and correct copies of the process and pleadings served upon Foster Wheeler are being filed with this Notice of Removal.

**Conclusion**

19. Removal of this action is proper under 28 U.S.C. § 1442, because it is a civil action brought in a state court, and the federal district courts have original jurisdiction over the subject matter under 28 U.S.C. § 1442(a)(1) because Foster Wheeler was acting under an officer or agency of the United States.

WHEREFORE, Foster Wheeler, pursuant to these statutes and in conformance with the requirements set forth in 28 U.S.C. § 1446, removes this action for trial from the Circuit Court of the Cook County, Illinois County Department, State of Illinois, on this **31st** day of August, 2011.

Respectfully submitted,

/s/ Daniel M. Finer, Esq.
**ATTORNEYS FOR DEFENDANT:**
**FOSTER WHEELER ENERGY CORPORATION**

William F. Mahoney – ARDC# 3121944
Steven A. Hart – ARDC# 6211008
Daniel M. Finer – ARDC# 6289471
Segal McCambridge Singer & Mahoney, Ltd.
233 S. Wacker Drive, Suite 5500
Chicago, Illinois 60606
(312) 645-7800

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to Plaintiff's counsel and all known counsel of record via ECF Filing on this **31st** day of **August**, **2011**.

David O. Barrett
Cooney & Conway
120 North LaSalle Street
30th Floor
Chicago, Illinois 60602
ATTORNEYS FOR PLAINTIFFS

**VIA LEXIS NEXIS**
All Known Defense Counsel

/s/ Daniel M. Finer, Esq.